UNITED STATES of America, Plaintiff–Appellee,

v.

Randy Clayton YOST, and Katherine Lee Yost, Defendants–Appellants.

Nos. 93–6160, 93–6169.

United States Court of Appeals, Tenth Circuit.

May 10, 1994.

---

David B. Autry (C. Merle Gile, of Gile, Williams & Autry, Oklahoma City, OK, was with him on the brief), of Gile, Williams & Autry, Oklahoma City, OK, for defendants-appellants.

Ted A. Richardson (Vicki Miles–LaGrange, U.S. Atty., with him on the brief), Asst. U.S. Atty., Oklahoma City, OK, for plaintiff-appellee.

Before ANDERSON, HOLLOWAY, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Defendant Randy Clayton Yost was convicted of arson under 18 U.S.C. §§ 844(i) and 2 and mail fraud under 18 U.S.C. §§ 1341 and 2. Defendant Katherine Lee Yost was convicted of mail fraud under 18 U.S.C. §§ 1341 and 2. Defendants appeal these convictions and their sentences on several grounds.[1] We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2). We affirm the convictions. However, we find that a remand is necessary for resentencing.

## I. Background

In the early morning of July 22, 1991, Central Sales and Service ("Central Sales"), an automobile body repair shop owned and operated by Randy Yost, was destroyed by a serious fire. There is no dispute that this fire was a result of arson. After the fire, Mr. Yost and his wife, Katherine Yost, submitted substantial insurance claims to Farmer's Alliance Insurance under a residential policy with extension coverage for off-premises losses and to Homestead Insurance and Lloyd's of London under a business policy covering Central Sales. Further facts will be discussed below where they are relevant to defendants' specific claims on appeal.

Mr. Yost was charged with and convicted of arson in connection with the fire under 18 U.S.C. §§ 844(i) and 2. Both Mr. Yost and

---

1. We deal with these cases in a single opinion because they involve essentially the same facts and entail common claims.

Mrs. Yost were charged with and convicted of mail fraud in connection with the insurance claims under the residential policy under 18 U.S.C. §§ 1341 and 2. Defendants now appeal.

## II. Validity of the Superceding Indictment

■ Defendants allege that the superceding indictment in the case should have been dismissed because it was based on false testimony by a government witness. Agent Harry Eberhardt of the Bureau of Alcohol, Tobacco and Firearms testified before the grand jury that the morning of the fire at Central Sales he interviewed a witness, Tom West, who said that he saw Randy Yost's pickup truck parked outside Central Sales just before the fire started. However, Mr. West testified at trial that, while he saw a vehicle, he could not positively identify it as belonging to Randy Yost nor could he even be sure the vehicle was a pickup truck. Further, Mr. West said that he never told Agent Eberhardt that he could positively identify the vehicle as belonging to Mr. Yost. Defendant's allege that Agent Eberhardt's testimony to the contrary before the grand jury evidences government misconduct sufficient to justify dismissing the indictment. We disagree.

■ We have established that [d]ismissal of an indictment after a conviction is essentially a prophylactic measure, designed more to deter prosecutorial misconduct before the grand jury than to protect a particular defendant's rights.... If a petit jury has knowledge of the same misstatement made to the grand jury and nonetheless finds a defendant guilty beyond a reasonable doubt, it is unlikely that the error before the grand jury, which must find only probable cause, was prejudicial.

*United States v. Page,* 808 F.2d 723, 726–27 (10th Cir.) (citations omitted), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 683

(1987). Because dismissal of an indictment following a conviction is such an extreme remedy, we will only do so in rare circumstances where prosecutorial misconduct is flagrant or vindictive. *Id.* This case involves nothing approaching that sort of misconduct.

In addition to Agent Eberhardt's testimony before the grand jury, Gary Lee Fisher, an associate of Randy Yost, told the grand jury that Mr. West said that he saw Randy Yost's pickup truck outside Central Sales thirty minutes before the fire. Thus, Mr. West had given at least two people the impression that he did in fact see Mr. Yost's pickup on the morning of the fire. In this light and in light of the character of Agent Eberhardt's testimony[2], it appears that there was at most some overstatement by Agent Eberhardt before the grand jury or simply a misunderstanding regarding Mr. West's degree of certainty rather than any serious misconduct. Further, Mr. West's uncertainty was later made eminently clear to the jury at trial. *See Page,* 808 F.2d at 727 (finding petit jury knowledge of information misrepresented to a grand jury relevant to whether the misrepresentation was prejudicial). We will not dismiss the superceding indictment.

## III. Sufficiency of the Evidence

■ Defendants contend that the evidence was insufficient to convict Randy Yost of arson and mail fraud and Katherine Yost of mail fraud. We review the record de novo for sufficiency of the evidence, *United States v. Grimes,* 967 F.2d 1468, 1472 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992), and apply the following test: "The evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Hooks,* 780 F.2d 1526, 1531

2. At a hearing prior to trial regarding the superceding indictment, Agent Eberhardt admitted that Mr. West qualified his identification of Randy Yost's truck by saying that "he could not swear to it." Agent Eberhardt did not mention this qualification to the grand jury, saying only that the government had a witness who could place Randy Yost's truck at Central Sales just before the fire started.

(10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986).

■ Under this standard, we find sufficient evidence to sustain the convictions of both Mr. and Mrs. Yost. With respect to Mr. Yost's arson conviction, there was evidence at trial that the Yosts had severe financial troubles; that Mr. Yost renewed his previously lapsed business insurance within several weeks of the fire and that he called to check on whether the coverage was in force within a week of the fire; that Mr. Yost ordered an inordinately large amount of DTL–10 paint thinner, the agent for starting the fire, three weeks before the fire; that much of the equipment normally in the shop had been removed prior to the fire and that it would have taken two people approximately five hours to remove the equipment, making the claim that there was a burglary in connection with the fire implausible; and that Mr. Yost was at Central Sales with a large van for several hours within days of the fire. Undoubtedly this evidence is circumstantial. However, viewing it and the other evidence presented at trial in the light most favorable to the government and allowing for the logical inferences which can be drawn therefrom, reasonable jurors could find Mr. Yost guilty of arson beyond a reasonable doubt. *See Grimes,* 967 F.2d at 1470 (an arson conviction can be based on circumstantial evidence).

■ We reach the same conclusion with respect to the mail fraud convictions of both Mr. and Mrs. Yost. First, it is apparent that both defendants were involved in filling out and submitting the insurance claims under the residential policy. Second, there was sufficient evidence from which the jury could have concluded that the Yosts listed items which were not actually destroyed in the fire and listed items at inflated prices. For example, arson expert Weldon Carmichael testified that after the fire there was no residue of many of the items listed by the Yosts as having been lost in the fire. In addition, Doy Davis of Wesco Insurance, through whom the Yosts bought their residential policy, including the off-premises extension coverage, testified that on the day of the fire Mrs. Yost told him that they had lost "some children's bicycles, some clothes, some dishes, a lawn mower and possibly a few other miscellaneous items." No mention was made at the time of diamond jewelry and the other seemingly important and expensive items later claimed lost (the total claim eventually amounted to over $49,000). Further, with respect to Randy Yost, because he was found to be involved in the arson itself, any claim he submitted as a result of the fire could constitute mail fraud. Third, we find no merit in Katherine Yost's argument that there is no substantial evidence that the use of the mails in the scheme was reasonably foreseeable by her.[3] The record makes clear that the Yosts mailed the residential policy claim to Farmer's Alliance Insurance through Mr. Harvey Lewis, the public insurance adjuster the Yosts hired. A reasonable jury could certainly find the use of the mails reasonably foreseeable under such circumstances.

■ Defendants further advance some specific points with regard to the sufficiency of the evidence which we will address briefly. First, they argue that, because the total residential policy claim submitted far exceeded the limits of the extension coverage for off-premises losses under the residential policy (the extension coverage was capped at $10,500 and the claim submitted was for over $49,000), there was insufficient evidence of a willful scheme to defraud. Boiled down, defendants' position is that, even if some items were fraudulently listed in the claim, the value of the items legitimately lost would have reached the $10,500 policy limit and that therefore no fraud occurred. This argument has no merit. It is far from clear what the value of the personal property actually destroyed in the fire might have been. Addi-

---

3. We have held that the § 1341 requirement for mail fraud that a person "mail or ... knowingly cause to be delivered by mail" the information in question is satisfied where there is knowledge that the mails will be used or where the use of the mails can be reasonably foreseen. *United States v. Sasser,* 974 F.2d 1544, 1555 (10th Cir. 1992) (citing *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1063, 122 L.Ed.2d 368 (1993).

tionally, as the district court pointed out, it is not necessary that a scheme to defraud actually succeed to support a mail fraud conviction. *See* 18 U.S.C. § 1341; *United States v. Curtis,* 537 F.2d 1091, 1095 (10th Cir.1976).

■ We also reject Mr. Yost's claim that there was insufficient evidence of an interstate commerce nexus to sustain his arson conviction under § 844(i). There was substantial testimony at trial that Central Sales' business activity included automobile parts and equipment which moved in interstate commerce. This is a sufficient interstate commerce nexus. *See United States v. Monholland,* 607 F.2d 1311, 1315 (10th Cir.1979) ("The history of 18 U.S.C. § 844(i) indicates that the commerce requirement contained therein is to be broadly construed."); *United States v. Schwanke,* 598 F.2d 575, 578 (10th Cir.1979) (holding that even a de minimis effect on interstate commerce creates a sufficient nexus under § 844(i) and finding such a nexus where the building destroyed contained a cafe which purchased supplies in interstate commerce).

### IV. Aiding and Abetting Instruction

■ Defendant Randy Yost claims that the trial court erred in instructing the jury that he could be convicted of arson as an aider and abettor through 18 U.S.C. § 2. We review de novo the propriety of a jury instruction to which a party objects at trial. *United States v. Mullins,* 4 F.3d 898, 899 (10th Cir.1993).

Mr. Yost argues that, because it was not alleged that any other specific actor was responsible for the arson, he cannot be charged as an aider and abettor. He is mistaken.

Though a conviction under 18 U.S.C. § 2 is based on an aiding and abetting theory, those convicted as "aiders and abettors" are deemed responsible as principals. 18 U.S.C. § 2; *see also Standefer v. United States,* 447 U.S. 10, 19, 100 S.Ct. 1999, 2005, 64 L.Ed.2d 689 (1980) (pointing out that § 2 is designed so that "those whose relations to a crime

would be that of accessories before the fact according to the common law are made principals"). A conviction based on § 2 requires a showing: (1) "that a defendant associate himself with [a criminal] venture"; (2) "that he participate in it as in something that he wishes to bring about"; (3) "that he seek by his action to make it succeed"; and (4) that "[t]he proof ... establish[es] the commission of the offense by someone and the aiding and abetting by the defendant so charged." *United States v. Langston,* 970 F.2d 692, 705 (10th Cir.) (internal quotations and citations omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992). Only this fourth requirement is at issue here.

Mr. Yost argues, citing *United States v. Martin,* 747 F.2d 1404 (11th Cir.1984), that the fourth requirement for § 2 liability is not satisfied because the government did not allege nor is there sufficient evidence to support the idea that some specific "other party" committed the arson. A closer look at *Martin* illustrates that this is incorrect. In *Martin* the Eleventh Circuit found the trial court's aiding and abetting instruction inappropriate because no one besides the defendant could have satisfied all of the requirements of the substantive offenses involved. *Id.* at 1407–08. Thus there was no one to aid and abet because defendant could not aid and abet himself.

■ This case differs significantly. The Yosts concede that all of the substantive elements of the crime of arson under § 844(i) were present. Though there is no specific allegation of who besides Mr. Yost might have physically committed the arson, if Mr. Yost did not himself do it, it is undisputed that *someone* did. All that is required for a conviction based on 18 U.S.C. § 2 is a finding that Mr. Yost aided *someone* in committing the crime. *See Langston,* 970 F.2d at 705; *Martin,* 747 F.2d at 1407.[4] There is ample evidence from which a reasonable jury could have concluded that such was the case here. The aiding and abetting instruction to the jury was proper.

---

4. In fact, because liability under § 2 is treated as principal liability, there is no requirement that a de facto principal be convicted of an offense prior to convicting someone as an aider and abettor, nor is there even a bar to prosecuting someone as an aider and abettor after an alleged de facto principal is acquitted. *Standefer,* 447 U.S. at 15–20, 100 S.Ct. at 2003–06.

## V. Expert Testimony

■ Defendants next contend that the district court improperly admitted the expert testimony of Weldon Carmichael regarding the possibility that the alleged burglary at Central Sales was staged. Defendants base this objection variously on Fed.R.Evid. 402, 403, 702, 703, and 704. We review the trial court's decision to admit expert testimony only for an abuse of discretion. *United States v. Markum*, 4 F.3d 891, 895 (10th Cir.1993); *United States v. Barbee*, 968 F.2d 1026, 1031 (10th Cir.1992).

■ Defendants argue that Mr. Carmichael's testimony regarding the possibility of a staged burglary was unduly prejudicial because it amounted to testimony on the ultimate issue of guilt with insufficient evidence on which to base this conclusion. This argument has no merit. It is undisputed that Mr. Carmichael is an expert in cases of arson. It is not atypical for such cases to include an attempt to stage a burglary and defendants do not contend that Mr. Carmichael is generally unqualified to testify regarding burglaries staged prior to a fire. There is ample evidence in the record upon which Mr. Carmichael could have formed the opinion that any burglary prior to the arson at Central Sales was staged. We reviewed some of this evidence in Section III above and will not repeat that review here. Admitting his testimony on this point was not an abuse of discretion.

## VI. Sentencing

Lastly, defendants appeal the trial court's two-point upward enhancement of their sentences for obstruction of justice under United States Sentencing Guidelines ("U.S.S.G.") § 3C1.1. Defendant Katherine Yost also appeals the trial court's upward adjustment of her sentence for "more than minimal planning" under U.S.S.G. § 2F1.1(b)(2).

### A. Adjustment For More Than Minimal Planning

■ "More than minimal planning" under U.S.S.G. § 2F1.1(b)(2) "is deemed present in any case involving repeated acts over a period of time, unless it is clear that each in-stance was purely opportune." U.S.S.G. § 1B1.1, Application Note 1(f) (referenced by § 2F1.1). Because the district court's finding that Katherine Yost engaged in "more than minimal planning" is essentially factual, we review it only for clear error. *United States v. Abud–Sanchez*, 973 F.2d 835, 837 (10th Cir.1992); *see United States v. Wise*, 990 F.2d 1545, 1550 (10th Cir.1992) (while we review de novo questions of law under the sentencing guidelines, we review the district court's application of the guidelines to the facts of a particular case only for clear error).

The record shows an elaborate preparation of the forms and estimates necessary to submitting the claim under the Yosts' residential insurance policy. The claim included many different and expensive items which the jury and the court could have concluded were not actually lost in the fire. The record also supports an inference that the scheme to defraud evolved over a significant period of time. Mrs. Yost initially reported the loss of some personal items on July 23, 1991, the day after the fire. It was over a month later, on August 28, 1991, that the Yosts submitted the much more extensive claim to Farmer's Alliance Insurance. While this case does not represent the most egregious instance of "more than minimal planning," *see, e.g. Wise*, 990 F.2d at 1550; *Abud–Sanchez*, 973 F.2d at 837; *United States v. Sanchez*, 914 F.2d 206, 207–08 (10th Cir.1990), we cannot say that the district court's finding in this regard was clearly erroneous.

### B. Adjustment For Obstruction of Justice

Section 3C1.1 of the Sentencing Guidelines calls for a two-point sentence enhancement where a "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. Under this section, the district court enhanced the sentences of both defendants saying that the jury and the court found the defendants to be "untruthful." The defendants now object to that enhancement.

The "denial of guilt or exercise of the constitutional right to testify in one's own defense is not a proper basis for application of Guidelines section 3C1.1." *United States v. Hansen,* 964 F.2d 1017, 1020 (10th Cir. 1992). However, because "giving perjurious testimony [is] not a protected constitutional right," such testimony can be grounds for an obstruction of justice sentence enhancement. *Id.; United States v. Dunnigan,* — U.S. —, ———, 113 S.Ct. 1111, 1115–16, 122 L.Ed.2d 445 (1993). Because "the trial judge is entitled to observe the defendant at trial and consider in sentencing whether he or she gave perjured testimony," *Markum,* 4 F.3d at 897, we apply deference in reviewing the trial court's finding.

The trial court, however, must make a specific finding that a defendant actually perjured himself before enhancing a sentence under § 3C1.1. *Id.* The Supreme Court has said that "if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out." *Dunnigan,* — U.S. at —, 113 S.Ct. at 1117.[5] A mere statement that the court or the jury "may not have believed the defendant's testimony" is insufficient because it "stops well short of a finding that the defendant perjured himself." *Hansen,* 964 F.2d at 1020. "[I]t is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." *Dunnigan,* — U.S. at —, 113 S.Ct. at 1117. It is sufficient, however, "if ... the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." *Id.* The *Dunnigan* court cites as an acceptable example of the latter the following:

The court finds that *the defendant was untruthful at trial with respect to material matters* in this case. [B]y virtue of her failure to give truthful testimony on mate-

rial matters *that were designed to substantially affect the outcome of the case,* the court concludes that the false testimony at trial warrants an upward adjustment by two levels.

*Id.* (emphasis and alteration in original) (internal quotations omitted). In *Markum,* 4 F.3d at 897–98, we expressly adopted the procedure laid out by the Supreme Court in *Dunnigan.*

In this case the district court said with respect to Randy Yost:

Well, I heard the testimony, as well as did the jury, obviously, and they reached the conclusion that he was being untruthful in his testimony, and I certainly do not disagree with that. And I'm satisfied and I do agree with it. And I'm satisfied that by his testimony it was an attempt to obstruct justice and I am going to deny or overrule [defendant's] objection [to the § 3C1.1 enhancement].

The district court ruled with respect to Katherine Yost:

As with Mr. Yost, the defendant took the witness stand and she testified. I'm satisfied she did not tell the truth about her involvement and that was my finding. That is my finding and that is the jury's finding. And by testifying contrary to the truth, I'm satisfied that was an attempt to obstruct justice and I'm going to overrule your objection in that regard.

Defendant's argue that these findings are insufficient in light of the case law cited above. Though the government "submits that defendants were properly assessed a two-point enhancement pursuant to ... § 3C1.1," it concedes that "in light of this Court's decision in [*Markum* ], it appears that resentencing would be appropriate to permit the district court to comply with the procedure set forth therein." We agree. We therefore remand the case to the district court for resentencing so that it may make the determinations for both defendants necessary with regard to a sentence enhance-

---

**5.** "Perjury" occurs where "testifying under oath or affirmation[, a witness] gives false testimony concerning a material matter with willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Dunnigan,* — U.S. at —, 113 S.Ct. at 1116 (citing the federal criminal perjury statute, 18 U.S.C. § 1621).

ment for obstruction of justice under U.S.S.G. § 3C1.1.

## VII. Conclusion

Defendants' convictions are affirmed. The enhancement of Katherine Yost's sentence for "more than minimal planning" under U.S.S.G. § 2F1.1(b)(2) is also affirmed. The case is remanded to the district court for further determination regarding the enhancement of both defendants' sentences for obstruction of justice under U.S.S.G. § 3C1.1.