**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 8 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

BRIAN AVERY FRIERSON,

    Defendant-Appellant.

No. 99-3385

(D.C. No. 99-CR-10009-01-JTM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK**, **ANDERSON**, and **BRORBY**, Circuit Judges.[**]

---

A jury convicted Defendant Brian Avery Frierson of two counts of interstate transportation of counterfeit securities in violation of 18 U.S.C. § 2314. The district court sentenced Defendant to 33 months imprisonment, three years of supervised release, and a special assessment of $100 for each count, with the terms of imprisonment and supervised release to run concurrently. Defendant appeals his conviction and sentence. We exercise

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(A)(2). The case is therefore ordered submitted without oral argument.

jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm in part and remand with directions to vacate.

## I.

Defendant's convictions stem from a counterfeit check cashing scheme involving Defendant, his brother Michael Frierson, Jad Wolf, Gerald Farha, and David Miller. At trial, Wolf testified that Defendant, Michael Frierson, and Miller contacted Wolf by phone about sending checks to him in Kansas. At Michael Frierson's direction, a man named Freddie C. delivered two counterfeit $400,000 checks to Defendant's residence in an envelope on February 12, 1998. Michael Frierson directed Defendant to send the package to Wolf. Farha, who ran Farha Enterprises Used Cars in Goddard, Kansas, testified that he received a Federal Express package with two $400,000 checks on February 13, 1998. The package had been shipped from Defendant's mailing address. Michael Frierson testified that he did not inform Defendant that the envelope contained counterfeit checks until after Defendant had sent the package to Farha.

Farha gave the envelope with the checks to Wolf. Thereafter, Wolf gave the checks to Randy Wolverton, an FBI agent in Wichita, Kansas. The checks were each in the amount of $400,000 and drawn on the account of "Dean Witter Reynolds Inc." at the Bank of America. Phyllis Werneke, operations manager at Dean Witter in Wichita, testified that the checks did not conform to Dean Witter standards, contained inaccurate information, and to her knowledge were not authorized by Dean Witter.

2

After he sent the package, Defendant left a telephone message for Wolf attempting to confirm that Wolf received the Federal Express package. On February 13, 1998, at Agent Wolverton's direction, Wolf placed a monitored telephone call to Defendant. During the conversation, Wolf asked Defendant questions about the checks and asked what would happen once the checks were deposited. Defendant informed Wolf that he could call a number written on the checks to verify funds. Defendant and Wolf further discussed meeting with Michael Frierson in Las Vegas. Finally, Wolf indicated that he preferred to talk about the details with Defendant because Defendant knew a lot more about the plan than anyone else. In response, Defendant stated, "That's why I called you today and gave you this number."

The trial also included testimony regarding a counterfeit $1.5 million check. Farha testified that Miller and Wolf spoke with Farha in January of 1998 and asked him to place a bet for them in Las Vegas over Super Bowl weekend. Miller and Wolf told Farha that they would give him a cashier's check to cover the bet. When Wolf met Farha in Las Vegas, Wolf brought a $1.5 million check. The check, however, was not a cashier's check and was not made payable to either Wolf or Farha. Instead, the check was made payable to a fictitious name. Nevertheless, Wolf and Farha attempted to cash the check at two different locations without success. Wolf testified that he subsequently returned the

check to a man who introduced himself as Brian or Avery Frierson.[1]  During the conversation, Wolf and the person he believed to be Defendant discussed the possibility of attempting the scheme again in another fashion in Wichita, Kansas.

Based on the two $400,000 checks, a grand jury indicted Defendant charging him with two counts of interstate transportation of counterfeit securities in violation of 18 U.S.C. § 2314.  A jury found Defendant guilty of both counts and the district court sentenced him to 33 months confinement on each count to run concurrently, three years supervised release on each count to run concurrently, and a $100 special assessment on each count.

## II.

Defendant argues the Government presented insufficient evidence to convict him of interstate transportation of counterfeit securities.[2]  In reviewing the sufficiency of the evidence, we "review the record de novo and ask only whether taking the evidence–both

---

[1]  Wolf, however, admitted that identifying the individual would be difficult because he had only seen him for a short time.  Michael Frierson testified that he had met with Wolf, but denied receiving the check.  Further, Michael Frierson testified that Defendant did not accompany him to Las Vegas when he met with Wolf.  Clarence Malone testified that he and Defendant attended a Super Bowl party together in California.

[2]  18 U.S.C. § 2314 provides in relevant part:

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities . . . knowing the same to have been falsely made, forged, altered, or counterfeited . . . [s]hall be fined under this title or imprisoned not more than ten years, or both.

direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999) (quotations omitted). "The jury, as fact finder, has discretion to resolve all conflicting testimony, weigh the evidence, and draw inferences from the basic facts to the ultimate facts." United States v. Anderson, 189 F.3d 1201, 1205 (10th Cir. 1999) (quoting United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir.1998)). We may not uphold a conviction, however, obtained by piling inference upon inference. Id.

To convict Defendant of interstate transportation of counterfeit securities under 18 U.S.C. § 2314, the Government must prove Defendant (1) with unlawful or fraudulent intent, (2) caused the interstate transportation of (3) falsely made, forged, altered, or counterfeited securities, (4) with knowledge that the securities were altered. 18 U.S.C. § 2314; United States v. Wright, 791 F.2d 133, 136 n.1 (10th Cir. 1986). Defendant argues the Government failed to present substantial evidence from which a jury might properly find beyond a reasonable doubt that at the time Defendant sent the checks, (1) he knew that they were falsely made or counterfeit or (2) he was acting with unlawful or fraudulent intent.

After examining the record, we conclude the Government presented sufficient evidence for the jury to convict Defendant of interstate transportation of counterfeit

securities. Wolf testified that prior to February 10, 1998, Defendant and others contacted him about sending checks to Kansas. Wolf further testified that he spoke with Defendant about the plan and Defendant exhibited familiarity with the details. Finally, Wolf testified that Defendant agreed to a meeting in Las Vegas with Michael Frierson and Wolf after the checks were cashed. The audiotape of Defendant's conversation with Wolf show Defendant's knowledge of, and participation in, the scheme. Miller also testified that Defendant was involved in the scheme. The evidence shows that Defendant knew the checks were not legitimate when he sent them from California to Kansas, and that he had the intent to defraud.

## III.

Defendant was charged with and convicted of two counts of interstate transportation of counterfeit securities. Defendant argues that the indictment erroneously charged Defendant with two counts instead of just one because the simultaneous transportation of more than one counterfeit security constitutes a single offense under 18 U.S.C. § 2314. Based on United States v. Lovett, 964 F.2d 1029, 1040-41 (10th Cir. 1992), the Government agrees. In Lovett, 964 F.2d at 1040-41, we accepted the defendant's argument that "the appropriate unit of prosecution for a violation of 18 U.S.C. § 2314 is the number of transportations across state lines, not the number of financial transactions with each financial institution." Here, Defendant sent the two $400,000 checks in one envelope, constituting one transportation across state lines. The

6

Government did not charge Defendant for any involvement in the $1.5 million check. As such, the Government should have charged Defendant with only one count of interstate transportation of counterfeit securities. Accordingly, we vacate the conviction on Count 2. We also vacate the district court's order that Defendant pay a $100 mandatory special assessment on Count 2.

IV.

At the sentencing hearing, the district court determined the base offense level to be six. Over Defendant's objection, the district court included the $1.5 million check as relevant conduct and imposed a twelve level enhancement pursuant to U.S.S.G. § 2F1.1(b)(1)(M) for the loss of more than $1,500,000. Again over Defendant's objection, the district court also imposed a two level enhancement pursuant to U.S.S.G. § 2F1.1(b)(2)(A) for more than minimal planning. Finally, the district court declined Defendant's request to decrease his offense level two to four levels pursuant to U.S.S.G. § 3B1.2 for acting as a minor or minimal participant. The district court determined the final offense level to be 20 with a criminal history category of I, resulting in a sentencing range of 33 to 41 months.

Defendant argues the district court incorrectly calculated Defendant's offense level under the Sentencing Guidelines. The Government bears the burden of proving by a preponderance of the evidence that a particular sentence enhancement is justified. United States v. Keifer, 198 F.3d 798, 800 (10th Cir. 2000). Similarly, Defendant bears the

burden of proving his entitlement to an offense level reduction by a preponderance of the evidence. United States v. Smith, 131 F.3d 1392, 1399 (10th Cir. 1997). We review the district court's factual findings regarding sentencing for clear error and its legal interpretation of the Guidelines de novo. United States v. Maldonado-Acosta, 210 F.3d 1182, 1183 (10th Cir. 2000).

## A.

Defendant argues the district court clearly erred by imposing a two level enhancement pursuant to U.S.S.G. § 2F1.1(b)(2)(A) for more than minimal planning. The Sentencing Guidelines define "more than minimal planning" as "more planning than is typical for the commission of the offense in a simple form." U.S.S.G. § 1B1.1, Commentary, Application Note 1(f). Further, a case involving repeated acts over a period of time constitutes more than minimal planning, unless each instance was purely opportune. Id. The enhancement for more than minimal planning targets "criminals who engage in complicated criminal activity because their actions are considered more blameworthy and deserving of greater punishment than a perpetrator of a simple version of the crime." United States v. Rice, 52 F.3d 843, 851 (10th Cir. 1995).

The district court concluded that the repeated phone calls between Defendant and other participants, Defendant's involvement, and the number of checks and transactions rendered the planning more than minimal. Further, the district court noted that Defendant did not commit the offense on the "spur of the moment," but rather participated in an

8

elaborate scheme requiring a significant amount of planning. The district court did not clearly err in finding the offense involved more than minimal planning. The instant offense involved at least six individuals, numerous telephone calls, obtaining and delivering counterfeit checks, and a future plan to meet in Las Vegas. See United States v. Yost, 24 F.3d 99, 105 (10th Cir. 1994) (district court's finding of "more than minimal planning," not clearly erroneous where mail fraud defendant's offense involved elaborate preparation of forms and estimates necessary to submit fraudulent insurance claim and scheme to defraud evolved over period of one month). "While this case does not represent the most egregious instance of 'more than minimal planning,' we cannot say that the district court's finding in this regard was clearly erroneous." Id. (internal citations omitted).

B.

Defendant also argues the district court improperly included the $1.5 million check as relevant conduct and subsequently increased his offense level by 12 levels pursuant to U.S.S.G. § 2F1.1(b)(1)(M) because the loss exceeded $1,500,000. The Sentencing Guidelines define the term "offense" as the "conviction and all relevant conduct under § 1B1.3 (Relevant Conduct)." U.S.S.G. § 1B1.1 note 1(*l*). Section 1B1.3(a)(2) provides in relevant part that offenses which are groupable under § 3D1.2(d) are part of a defendant's relevant conduct if they are "part of the same course of conduct or common scheme or plan as the offense of conviction." Section 3D1.2(d) requires grouping when,

9

as here, the total amount of harm or loss largely determines the offense level. Defendant argues the Government did not prove the $1.5 million check offense was part of the same course of conduct or common scheme or plan as the charged offense.

We have interpreted U.S.S.G. § 1B1.3(a)(2) to mean that sufficiently similar conduct within the same temporal proximity may be considered relevant for purposes of determining the guideline range. United States v. McClelland, 141 F.3d 967, 973 (10th Cir. 1998) (in 18 U.S.C. § 2314 interstate fraud prosecution, district court properly considered unrelated incidents involving other customers as "relevant conduct" for sentencing purposes, where incidents illustrated same course of criminal behavior). To determine whether conduct is related to the instant offense, we generally examine several factors, including the similarity, temporal proximity, and regularity of the instant offense and the prior conduct. United States v. Torres, 182 F.3d 1156, 1159-60 (10th Cir. 1999). The Government bears the burden of proving the facts of relevant conduct by a preponderance of the evidence. United States v. Fortier, 180 F.3d 1217, 1225 (10th Cir. 1999).

Here, the plan to cash the counterfeit $1.5 million check in Las Vegas in January of 1998 included the same individuals involved in the plan regarding the two counterfeit $400,000 checks. Miller testified that Michael Frierson told him that Defendant knew about the $1.5 million check. While Defendant presented testimony that he remained in California and did not go to Las Vegas, Wolf testified that Defendant met Wolf in Las

10

Vegas and retrieved the check. Further, Wolf testified that he discussed with Defendant the possibility of attempting a similar scheme in Wichita, Kansas. In addition, the instant offense occurred within one month after the failed $1.5 million check cashing scheme. Based on the evidence in the record, the district court did not err in considering the $1.5 million check as relevant conduct.

C.

Defendant argues the district court erred by refusing him a two level downward adjustment under U.S.S.G. § 3B1.2 based on his mitigating role in the offense. Section 3B1.2 "vests the district court with discretion to grant a base offense level reduction if it finds a defendant is less culpable relative to other participants in a given offense." United States v. Santistevan, 39 F.3d 250, 254 (10th Cir. 1994). Subsection 3B1.2(a) provides a four level reduction if the defendant acted as a "minimal participant" in the offense. Similarly, subsection 3B1.2(b) provides a two level reduction if the defendant acted as a "minor participant" in the offense. The Commentary states that subsection (a)'s "minimal participant" reduction should be used infrequently and only applies to defendants "who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, comment. n.1. Subsection (b)'s "minor participant" reduction, on the other hand, applies to any "participant who is less culpable than most other participants, but whose role could not be described as minimal." Id. n.3.

The record shows Defendant actively engaged in the scheme to cash the $400,000

11

checks. He sent the package containing the checks, he left a message with Wolf attempting to confirm receipt of the package, and he discussed the plan with Wolf, acknowledging that he was the most knowledgeable about the plan details. See United States v. Onheiber, 173 F.3d 1254, 1258 (10th Cir. 1999) (application of § 3B1.2 unwarranted for defendant who handled large sum of cash, had responsibility for transporting the drugs, had some knowledge of drugs, and stated he could arrange a multi-pound drug deal). Accordingly, the district court did not clearly err in refusing to grant Defendant a two to four level reduction under § 3B1.2.

V.

We AFFIRM Defendant's conviction, sentence, and special assessment on count one, and REMAND this case to the district court with directions to VACATE Defendant's conviction, sentence, and special assessment on count two.

Entered for the Court,


Bobby R. Baldock
Circuit Judge

12