F I L E D
United States Court of Appeals
Tenth Circuit

JUN 9 2004

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

AUSTIN A., a juvenile,

      Defendant-Appellant.

No. 03-2202
(D. N.M.)
(D.Ct. No. CR-03-600-MCA)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HARTZ**, Circuit Judge.

Appellant Austin A., a juvenile represented by counsel, appeals his

conviction for the delinquent act of aiding and abetting in arson in Indian country

in violation of 18 U.S.C. §§ 2, 81 and 1153, and the district court's order denying

his motion to dismiss on grounds it lacked authority to hold a disposition hearing

beyond the twenty-day statutory time limit proscribed by Section 5037(a) of the

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031 to 5037. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and reverse the conviction and sentence.

## I. Factual Background

On March 30, 2002, Austin, a sixteen-year-old enrolled member of the Laguna Indian Tribe, participated with another minor, Andrew L., in the burglary of two homes located on the Laguna Pueblo. Prior to the burglaries, both juveniles had been drinking. During the first burglary of House No. 74, they broke through the back door and covered their hands to conceal their fingerprints; Austin covered his hands with his shirt sleeve, but nevertheless later believed he left finger prints in portions of the home. They took stereos and speakers, and a television that they accidentally dropped and left outside the house. Before their final exit from the house, Austin saw Andrew turn the gas stove burner on and told Andrew to "Hurry up. Let's go.... Let's get out of here." Austin saw Andrew throw some towels and a roll of paper towels onto the lit burner. Austin asked Andrew why he turned on the burner and threw the items on it, to which Andrew replied "Forget that shit," or "Don't worry about that shit," and Austin responded "All right." When they left House No. 74, the items did not catch fire right away; Austin saw the items "smoldering" and "smoking," but did not think

they would burn.

Next, they went directly to House No. 73, which they also burglarized. Before exiting House No. 73, Andrew lit fire to a curtain, which Austin shook or stomped out, extinguishing the fire. When the boys left House No. 73 and walked past House No. 74, they saw a fire burning inside. During his subsequent interview with authorities and at trial, Austin explained they discussed trying to put the fire out, but decided the fire was too big and they might get caught and charged with the crime. Austin then returned to a neighborhood home where he and his father were staying. Austin smelled smoke coming from the fire and saw the flames growing larger. When Austin's father said he smelled smoke, Austin told him the air already smelled like smoke. After someone reported the fire, Austin returned to House No. 74, where he and another person unsuccessfully tried to put out the fire; at that time, he did not tell anyone how the fire started. Shortly after the burglaries and fire, Austin and Andrew set a stolen stereo on fire in order to destroy evidence of their burglary.

At an interview with authorities and then at trial, Austin consistently stated he did not intend or participate in the arson. Similarly, Andrew testified that he, not Austin, started both fires, and that they never discussed or planned burning

either house. Although Andrew did not recall any conversation with Austin when he lit the fires (ROA, Vol. III at 87-90), he testified burning House No. 74 was his "own act without Austin's help in any way."

## II. Procedural History

Following Austin's arrest, the government charged him with two counts of aiding and abetting in the damage and destruction of a dwelling by setting fire in Indian country, in violation of the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031 to 5037, and criminal statutes, 18 U.S.C. §§ 2, 81, and 1153.[1] After the government presented its case at trial, Austin's counsel moved for judgment of acquittal, which the district court denied. On May 7, 2003, following Austin's presentation of evidence and closing arguments, the district court determined Austin committed the delinquent act of aiding and abetting in arson in Indian country in violation of 18 U.S.C. §§ 2, 81 and 1153.

In its written decision, the district court concluded it could reasonably infer Austin aided and abetted in the arson of House No. 74 because he: 1) was present

---

[1] During a prior tribal proceeding, Austin pled guilty to burglary, theft and criminal mischief; and an arson charge was dismissed. Austin served a one-year sentence in juvenile detention, prior to his federal trial. Andrew pled guilty to the same charges as well as two counts of arson.

when the fire started; 2) stood by while Andrew lit the fire and did nothing to put out the fire or prevent damage; 3) covered his hands during the burglary to conceal his identity; 4) intended to take personal property from the house and burn it; and 5) urged the other juvenile to "Hurry up. Let's go.... Let's get out of here." In addition, at the close of the trial, the district court articulated, as additional reasons to support the conviction: 1) Austin's response of "All right" to Andrew when he asked Andrew why he turned on the burner and Andrew said "Forget that shit," and 2) Austin's "knowledge of the consequences of burners being left on on a stove."

Having concluded Austin aided and abetted in arson, the district court scheduled a disposition hearing, which it later *sua sponte* continued in order to find an alternative to detention.[2] Based on this delay, Austin's counsel unsuccessfully filed a motion to dismiss the proceedings on grounds the district court lacked authority to hold a disposition hearing beyond the twenty-day time

---

[2] Following the May 7, 2003 trial and the district court's conclusion Austin aided and abetted in arson, the district court issued a notice May 12, 2003 scheduling a disposition hearing for June 5, 2003. On June 4, 2003, the court notified Austin's counsel of its intent to continue the disposition hearing, and on June 11, 2003, issued a *sua sponte* notice setting the disposition hearing for September 11, 2003. On August 11, 2003, Austin's counsel filed a motion to dismiss for holding the disposition hearing beyond the twenty-day time limit mandated by 18 U.S.C. § 5037(a). On August 22, 2003, the district court held a hearing on the motion to dismiss, and denied the motion.

limit mandated by 18 U.S.C. § 5037(a). Following hearings on the motion to dismiss and sentencing, the district court sentenced Austin to three years probation, restitution in the amount of $105,752, and several special conditions, including residential treatment at Intermountain Youth Center in Santa Fe, New Mexico.

## III. Discussion

### A. Sufficiency of the Evidence

On appeal, Austin argues the evidence is insufficient to find he aided and abetted in the arson of either home, and, therefore, the evidence cannot sustain either the district court's denial of his motion for acquittal or its verdict. In support, Austin points to the government's uncontradicted, consistent evidence offered at trial that he did not plan or participate in starting either fire. Austin suggests the government's evidence, which included the testimony of Andrew and two investigating officers, clearly corroborates his own pretrial statements and trial testimony he did not intend or participate in the arson. Austin further contends his conduct did not meet the legal requirements for aiding and abetting under 18 U.S.C. § 2, because he did not 1) commit an overt act to facilitate the arson, or 2) engage in any affirmative action, such as encouraging Andrew's acts in committing arson. He further suggests his mere presence at the scene of arson,

and fleeing thereafter, may be sufficient for liability for misprision of a felony, but insufficient to find him guilty of "aiding and abetting" in arson.

The government disagrees, asserting the evidence supports the district court's verdict. While the government concedes Austin cannot be criminally liable if he was merely present at the scene of the arson, it maintains his actions go beyond mere presence and support a reasonable inference he acted in concert with Andrew. Specifically, the government argues the district court "could reasonably infer" Austin "participated directly in the arson of House [No.] 74 by assisting and directing Andrew," based on the same reasons articulated by the district court.[3]

In support of its argument, the government likens Austin's conduct to that of the mother in *United States v. Vallo*, 238 F.3d 1242, 1247-49 (10th Cir.), *cert. denied*, 532 U.S. 1057 (2001), who was found guilty of aiding and abetting in the death of her child, after she participated in the abuse of the child with another,

_____

[3] The government's reasons in support of conviction include the fact Austin: 1) did nothing to stop Andrew from starting the fire, evidencing his desire to conceal the burglaries and destroy evidence; 2) encouraged the arson and directed Andrew's actions by telling Andrew to "Hurry up... Let's go"; 3) went home, knowing the fire was burning and growing; 4) remained silent as the flames destroyed the house, rather than reporting the fire; and 5) reassured his father the smoke was not unusual.

did nothing to stop the abuse, and remained silent thereafter. The government

also relies on *United States v. Hatatley*, 130 F.3d 1399, 1406 (10th Cir. 1997),

where we affirmed the conviction of a defendant found guilty in the death of a

victim he helped eject from a car, beat and kicked, and left beaten and shirtless in

the freezing desert.

In examining these arguments, we first consider the standard of review

applied, as articulated in *United States v. Delgado-Uribe*, 363 F.3d 1077 (10th

Cir. 2004):

> We review the record *de novo* when reviewing both the sufficiency of
> the evidence to support a conviction and the denial of a motion for
> judgment of acquittal. We must determine whether viewing the
> evidence in the light most favorable to the Government, any rational
> trier of fact could have found the defendant guilty of the crime
> beyond a reasonable doubt. In conducting our inquiry, we do not
> weigh conflicting evidence nor consider the credibility of witnesses.
> Instead, we must simply determine whether the evidence, if believed,
> would establish each element of the crime.

*Id.* at 1081 (quotation marks, alterations and citations omitted).

In applying these standards, we held "circumstantial evidence, taken

together with any reasonable inferences which flow from such evidence, is

sufficient to establish guilt beyond a reasonable doubt." *United States v.*

*Lazcano-Villalobos*, 175 F.3d 838, 843 n.2 (10th Cir. 1999) (alteration, quotation

marks and citation omitted).  Nevertheless, we will not uphold a conviction obtained merely by piling inference on inference.  *See United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998).  "An inference is reasonable only if the conclusion flows from logical and probabilistic reasoning....  The evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt."  *Id.*  (quotation marks and citation omitted).  As is the situation in this case, where the district court denies a motion for judgment of acquittal at the close of the government's case and the defendant nevertheless proceeds with the case, we review the entire record on appeal.  *Delgado-Uribe*, 363 F.3d at 1082.

To show a defendant aided and abetted in the commission of a crime, including arson, the government must prove the defendant 1) wilfully associated himself with the criminal venture, and 2) aided the venture through some affirmative action.  *See id*. at 1084 (relying on *United States v. Jones*, 44 F.3d 860, 869 (10th Cir. 1995)).  With respect to the wilfulness of the actions, we have said the defendant must participate in the venture as something he wished to bring about and sought by his actions to make succeed.  *See United States v. Sarracino*, 131 F.3d 943, 946 (10th Cir. 1997); *United States v. Yost*, 24 F.3d 99, 104 (10th Cir. 1994).  Thus, "[m]ere presence at a crime scene is insufficient to prove aiding and abetting."  *Delgado-Uribe*, 363 F.3d at 1084.  Similarly, while

knowledge that a crime is being committed is relevant, some showing of intent to further the criminal venture must be introduced at trial. *Id.* In other words, "[m]ere presence at the scene of the crime with knowledge that the crime is being committed will not suffice to constitute aiding and abetting unless the jury is convinced beyond a reasonable doubt that such defendant was doing something to forward the crime and that he was a participant rather than merely a knowing spectator." *King v. United States*, 402 F.2d 289, 291 (10th Cir. 1968).

We recognize the level of participation in a criminal venture may be of "relatively slight moment." *See United States v. Whitney*, 229 F.3d 1296, 1303 (10th Cir. 2000) (quotation marks and citation omitted). However, "[w]hile evidence of relatively slight moment may warrant a ... finding of participation, a defendant may not stumble into aiding and abetting liability by inadvertently helping another in a criminal scheme unknown to the defendant." *Jones*, 44 F.3d at 869 (quotation marks and citations omitted).

Based on these principles, the facts of this case, and a review of the entire record, we conclude insufficient evidence supports Austin's conviction. While we are mindful we may not weigh conflicting evidence or consider the credibility of witnesses on appeal, *Delgado-Uribe*, 363 F.3d at 1081, it is clear the record in

this case contains little, if any, conflicting evidence, and, as the district court noted, the material facts necessary for resolution of the issues are undisputed. Moreover, the district court relied on many of Austin's statements in reaching its conclusions, establishing it did not question the veracity of those statements, but rather, interpreted them in conjunction with other facts and the applicable law. In applying the relevant law to the facts, we conclude the evidence clearly does not establish the necessary elements of aiding and abetting in the crime of arson, for the following reasons.

First, nothing in the record establishes Austin and Andrew discussed or planned to commit arson prior to Andrew's lighting the stove burner in House No. 74. The only affirmative action Austin allegedly took to aid in the arson, and the most damning evidence relied on by the district court, involved Austin's words to Andrew to "Hurry up...let's go." Because nothing in the record shows Austin knew Andrew intended to light the towels for the purpose of burning down the house or otherwise commit arson, it cannot be said these words, in the context in which they were used, were meant as encouragement for that purpose, rather than for the purpose of flight because of the burglary just committed.

Moreover, Andrew's admission the fire was his "own act without Austin's

help in any way," further establishes Austin's words did not encourage or otherwise embolden him to commit the act of arson, thereby countering the government's argument that Austin's words, while only of "relatively slight moment," nevertheless constituted a degree of participation warranting conviction. Even if Andrew interpreted those words as encouragement to commit arson, they were an inadvertent act by Austin in aiding in a criminal scheme clearly unknown to him. *Jones*, 44 F.3d at 869. Accordingly, Austin's words, under the circumstances of this case, do not show he wilfully associated himself with the criminal venture of arson or otherwise aided that venture through any affirmative action. *See Delgado-Uribe*, 363 F.3d at 1084.

Next, we find unconvincing the district court's reliance on other circumstantial evidence to support the conviction, and instead recognize such reliance as an inappropriate exercise of piling inference on inference. *See Valadez-Gallegos*, 162 F.3d at 1262. While the district court relied on the fact Austin was present when the fire started, his mere presence is plainly insufficient to prove he aided and abetted in the arson. *Delgado-Uribe*, 363 F.3d at 1084. The fact he covered his hands during the burglary to conceal his identity is not unusual when committing burglary, and does not prove he wilfully participated in arson for the purpose of destroying evidence of his burglary. The same is true

with respect to the district court's finding Austin intended to take personal property from the house for the purpose of burning it.[4]  Even if he took the property from the house for this purpose, such an act does not establish he would burn the house down, thereby defying the very reason for removing the equipment.  We cannot say such an inference or conclusion "flows from logical and probabilistic reasoning." *Valadez-Gallegos*, 162 F.3d at 1262.

To support the conviction, the district court also found inculpatory Austin's response to Andrew when he asked Andrew why he turned on the burner and Andrew said "Forget that shit" to which Austin responded "All right."  We find this colloquy far more exculpatory than incriminating, as it supports the fact Austin did not understand Andrew's intent to commit arson.  Similarly, the district court found Austin culpable because he had "knowledge of the consequence of burners being left on on a stove."  As previously pointed out, knowledge a crime is being committed is relevant, but some showing of intent to

_____

[4]  The record does not support the district court's assessment Andrew and Austin burglarized the homes and took electronic equipment with the intent or for the purpose of "burning" them.  Austin stated that they did not intend to burn the stereo, but later did so to destroy evidence of the burglary, and they would have burned the television too, which they dropped and left outside the house, but it was "too late."  Similarly, Andrew testimony establishes they did not originally intend to burn the equipment, because he testified they planned on taking the television home, but accidentally dropped it.

further the criminal venture must also be introduced at trial. *Delgado-Uribe*, 363 F.3d at 1084. Nothing in the record establishes such an intent or that he was anything more than a "knowing spectator." *King*, 402 F.2d at 291.

The district court also considered, as incriminating evidence, the fact Austin did nothing to put out the fire or prevent damage. In further support, the government points out Austin even misled his father when Austin told him the air already smelled like smoke. While one might argue Austin had a moral or legal duty to report or attempt to extinguish the fire he did not start, or that he may be guilty of some other offense for failing to act, we cannot say his inaction, taken together with the other circumstances of this case, establishes the necessary elements for the crime of aiding and abetting in arson, *i.e.,* with a wilful association with, or affirmative action in, the crime. *See Delgado-Uribe*, 353 F.3d at 1084.

Much has been made of the fact Austin wanted to, and did, flee or leave the crime scene after Andrew lit the stove burner and threw on flammable articles. In this case, it is clear the two juveniles were already in the process of exiting the house before Andrew started the fire, making it reasonable to conclude Austin's motive for fleeing was based on his desire to remove himself from the scene of

the burglary before being caught. The Supreme Court long ago cautioned courts on the evidentiary value of flight as an indicium of guilt. *See Bailey v. United States*, 416 F.2d 1110, 1114 and n.29 (D.C. Cir. 1969) (listing Supreme Court cases supporting proposition as early as 1896). Undoubtedly, in this case, burglary is a reasonable motive for Austin's flight, so his flight does not in and of itself prove he committed the arson.

Finally, the Tenth Circuit cases of *Vallo*, and *Hatatley*, as relied on by the government, are not dispositive to our determination. Unlike Austin, the mother in *Vallo* aided and abetted in the death of her child because she "actively participated" in the abuse of her child. 238 F.3d at 1249. As previously demonstrated, Austin took no affirmative action to participate in the arson. Similarly, in *Hatatley*, even though the charge of aiding and abetting in murder was struck from the indictment, it is clear the defendant actively participated in the death of the victim by assisting in his ejection from a vehicle and then beating and kicking him, before leaving him to die. 130 F.3d at 1404, 1406. While *Hatatley* stands for the proposition that a person who puts another in danger may be criminally liable for failing to safeguard or rescue that person, this proposition supports conviction for the crime of voluntary manslaughter. *Id.* at 1401, 1406. We cannot compare this situation or impute the same duty here where Austin did

-15-

not participate in the arson or put another life in peril.

Based on the foregoing reasons, we conclude the evidence patently does not support the conviction of aiding and abetting in the crime of arson. Accordingly, we reverse Austin's conviction and sentence.

## B. Delay in Disposition Hearing

On appeal, Austin requests, as a remedy, dismissal of his conviction on grounds the district court lacked authority to hold a disposition hearing beyond the twenty-day statutory time limit proscribed by 18 U.S.C. § 5037(a). Given our reversal of Austin's conviction on insufficient evidence, the relief he seeks has been afforded on other grounds. As a consequence, it is not necessary to address this issue on appeal, other than to recognize the statute on which Austin relies, 18 U.S.C. § 5037, does not explicitly provide a remedy, including dismissal for such a delay. Given our reversal, we also do not need to perform any other legal analysis, including the balancing of any speedy trial factors considered for delays in sentencing, as articulated in *Perez v. Sullivan*, 793 F.2d 249, 253-54 (10th Cir. 1986), other than to recognize the district court's reason for delay was to find a rehabilitative program as an alternative to incarceration, which was clearly

-16-

intended to benefit Austin and requested by his counsel.[5]


IV.  Conclusion

For the reasons set forth above, we **REVERSE** Austin A.'s conviction and sentence.


**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

---

[5] The district court determined it possessed *sua sponte* authority to continue the disposition hearing beyond the statutory time limit based on special circumstances warranting such a delay, including the good faith purpose of finding an alternative to detention – a purpose the district court considered consistent with the intent of the Federal Juvenile Delinquency Act to rehabilitate, rather than merely incarcerate, juveniles.  The district court also noted that the statute on which Austin's counsel relied, 18 U.S.C. § 5037, did not provide a remedy for delay beyond the twenty-day time limit, and Austin actually benefitted from the delay because of his acceptance into a residential program at the Intermountain Youth Center in Santa Fe, New Mexico – a program his counsel initially sought his participation in and which was ultimately included in his sentence.