**F I L E D**

PUBLISH

**APR 13 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SALVADOR DELGADO-URIBE, also
known as Chava,

    Defendant-Appellant.

No. 03-8003

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 02-CR-0072-02-J)**

---

L. Robert Murray, Assistant United States Attorney, (Matthew H. Mead, United States
Attorney, with him on the briefs), Cheyenne, Wyoming, for Plaintiff-Appellee.

James H. Barrett, Assistant Federal Public Defender, Cheyenne, Wyoming, for
Defendant-Appellant.

---

Before **HENRY**, **BALDOCK**, and **MURPHY**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

    A jury convicted Defendant Salvador Delgado-Uribe (Delgado) and his co-

defendant, Jennifer Myrick, of (1) conspiracy to possess with intent to distribute

marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, and

(2) possession with intent to distribute marijuana and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2.[1] At the close of the Government's case-in-chief, Delgado moved for judgment of acquittal under Fed. R. Crim. P. 29. The district court denied Delgado's motion, and later sentenced him to fifty-seven months imprisonment. On appeal, Delgado argues the district court erred in denying his motion for judgment of acquittal because the Government's evidence was insufficient to sustain his conviction. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

I.

Delgado and his co-defendant, Jennifer Myrick, were driving a red Plymouth Caravan from California to Illinois. Wyoming state trooper Jason Green noticed the van had an Oregon license plate attached to the rear of the van, but not the front of the van. Trooper Green knew Oregon law required the display of both a front and back license plate so he "ran" the van's back license plate through dispatch. Dispatch reported the license plate belonged to a white Toyota coupe rather than a red Plymouth Caravan. Based upon this information, Trooper Green stopped the van and approached the driver's side window.

Myrick, the driver, lowered her window about three inches as Trooper Green

---

[1] Decided and filed together with the companion case of United States v. Myrick, No. 03-8007, ____WL ____ (10th Cir. 2004) (unpublished disposition).

2

approached. Delgado was in the passenger seat. Trooper Green asked Myrick for the van's registration and she slipped him an envelope through the small opening. He then asked for her driver's license and she handed him an Illinois "identification card." After returning to his patrol car, Trooper Green discovered the envelope contained a purchase agreement for the van. He "ran" the vehicle identification number through dispatch and discovered the van was not reported stolen. Trooper Green returned to the van and asked Myrick to accompany him to the patrol car.

In the patrol car, Myrick admitted she did not have a valid driver's license. Upon further questioning, Myrick briefly explained to Trooper Green she lived in Moline, Illinois and had been in California for about a week and a half on "break." Trooper Green testified that Myrick appeared nervous. Trooper Green arrested Myrick for driving without a valid driver's license and placed her in the back of the patrol car.

Trooper Green approached the passenger side of the van and spoke to Delgado. Trooper Green asked Delgado if he had a driver's license and Delgado replied he did not have a driver's license. Trooper Green then asked Delgado who owned the van and Delgado replied he did not know. Delgado informed Trooper Green he did not speak English. Trooper Green asked for identification. Delgado produced a voter registration card from Mexico. Trooper Green asked Delgado where he and Myrick were going and Delgado replied "Moline." After discovering Delgado's voter registration card did not have a date of birth, Trooper Green placed Delgado in another patrol car that had arrived

3

on the scene.

Trooper Green made arrangements to have the van towed because neither Myrick nor Delgado had a valid driver's license. Trooper Green performed an inventory search of the van. As Trooper Green opened the passenger side door of the van, he smelled a very strong odor of raw marijuana. Trooper Green then opened the back door of the van and again smelled the "overwhelming aroma of raw marijuana." Trooper Green observed two suitcases sitting on top of four garbage bags in the back of the van. One suitcase belonged to Myrick and one belonged to Delgado. Trooper Green opened one of the garbage bags and discovered several bundles of marijuana. Law enforcement officers eventually discovered 166.5 pounds of marijuana in the back of the van and a can of air freshener in the passenger side door where Delgado had been sitting.

Myrick waived her Miranda rights. Upon questioning, Myrick denied any knowledge that marijuana was in the van. Myrick claimed she did not smell the marijuana because she had a cold and her nose was plugged. Myrick informed law enforcement officers that while she was in California, she was contacted by a "Felipe Rodriguez" from Chicago. Myrick stated Rodriguez was a friend whom she suspected of drug involvement. Myrick claimed Rodriguez offered to pay her if she would drive his brother to Chicago. Law enforcement officers later determined that Felipe Rodriguez,

also known as Miguel Delgado-Uribe, is Defendant's brother.[2]  Delgado was interviewed but did not make any statements or admissions.  Delgado and Myrick were indicted on drug charges.

At trial, Delgado testified he lived in Chicago.  After visiting his family in Mexico, Delgado re-entered the United States illegally.  While traveling in California, Delgado met "Roberto," who offered to help Delgado get back to Chicago.  Delgado testified he met Roberto at a mall.  Roberto placed Delgado's suitcase in the back of a van.  Delgado testified he never looked into the back of the van.  Delgado got into the passenger seat of the van because Myrick was in the driver's seat.  Delgado testified this was the first time he met Myrick.  Delgado admitted he smelled something peculiar in the van, but did not realize it was marijuana until Utah.  Delgado testified that upon realizing marijuana was in the van, he was too afraid to get out.  Delgado testified he drove the van in Nevada.  When asked whether he ever agreed to transport drugs with Myrick or anyone else, Delgado testified "[t]his is the first time."  When questioned about Felipe Rodriguez, Delgado admitted Rodriguez was his brother.

Myrick also testified at trial.  Myrick claimed that after she agreed to help Rodriguez's brother get back to Illinois, Delgado and another male picked her up in a white truck.  Delgado took Myrick to a Taco Bell where he dropped her off and told her

---

[2] Because Myrick knew the individual as "Rodriguez," he is referred to by that name throughout this opinion.

he would be right back. Delgado came back in the red Plymouth Caravan. When Myrick got into the van, she inquired about her luggage. Delgado indicated her luggage was in the back of the van. Myrick never looked into the back of the van.

According to Myrick, Delgado drove into the night while she slept. Myrick woke up in Utah and started to drive. Myrick testified they stopped for gas several times. One time, Myrick noticed Delgado rummaging through the back of the van. Myrick denied ever knowing the van was filled with marijuana. Myrick testified Delgado repeatedly sprayed a can of air freshener throughout their trip. When asked if she had met Delgado before the trip in question, Myrick responded yes and claimed Delgado and Rodriguez had visited her house in Moline on several prior occasions. At the close of all the evidence, the jury returned a guilty verdict against both Defendants.

II.

Delgado moved for judgment of acquittal at the close of the Government's case-in-chief. The district court denied the motion, finding the Government presented sufficient evidence to submit the case to the jury. See Fed. R. Crim. P. 29(a). At the close of all the evidence, Delgado renewed his motion for judgment of acquittal. The district court again denied the motion. Delgado argues the district court erred in denying his motion for judgment of acquittal because the Government failed to introduce sufficient evidence in its case-in-chief to support his conviction.

We review the record *de novo* when reviewing both the sufficiency of the evidence

to support a conviction and the denial of a motion for judgment of acquittal. United States v. Vallo, 238 F.3d 1242, 1246-47 (10th Cir. 2001). We must determine whether "viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." Id. (internal citation omitted). In conducting our inquiry, we do not weigh conflicting evidence nor consider the credibility of witnesses. United States v. McKissick, 204 F.3d 1282, 1289-90 (10th Cir. 2000). Instead, we must simply determine "whether [the] evidence, if believed, would establish each element of the crime." Vallo, 238 F.3d at 1247.

Pursuant to Fed. R. Crim. P. 29(a), a defendant may move for judgment of acquittal at the end of the Government's case-in-chief.[3] Generally, if the defendant's motion is denied, he has two options: (1) he may rest his case, or (2) he may proceed and present his case. See Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, Criminal Procedure § 24.6(b) (2d ed. 1999). If a defendant chooses to rest his case, our review of the record is necessarily limited to evidence produced during the Government's case-in-

---

[3] Rule 29(a) provides:

After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

chief alone. See Vallo, 238 F.3d at 1248. If a defendant chooses to present additional evidence, however, the "defendant *waives* the right to have the sufficiency of the evidence tested by the government's case alone" and we review the entire record on appeal. United States v. Bowie, 892 F.2d 1494, 1496 (10th Cir. 1990) (emphasis added); United States v. Lazcano-Villalobos, 175 F.3d 838, 844 n.3 (10th Cir. 1999); Vallo, 238 F.3d at 1248.[4]

In Vallo, 238 F.3d at 1248, we expressed concern, but did not resolve, whether the 1994 amendments to Fed. R. Crim. P. 29 had any affect on our "waiver rule." In 1994, Rule 29(b) was amended to state "[i]f the court reserves decision [on a motion for judgment of acquittal], it must decide the motion on the basis of the evidence at the time the ruling was reserved." Vallo, 238 F.3d at 1248.[5] Notably, the 1994 amendments in

_____

[4] LaFave explains:

If the trial judge rejects the motion for directed acquittal made at the end of the prosecution's case-in-chief, the defendant, who believes that the trial judge has erred may be faced with a dilemma. If the defense enters no evidence, the case will go to the jury, and if it should convict, the defense may appeal with the record before the appellate court limited only to the prosecution's case-in-chief. If the defense chooses to present its own evidence, the rule traditionally applied has been that appellate review of the sufficiency of the evidence as it stood when the prosecution completed its case-in-chief is lost.

Wayne R. LaFave, et al., Criminal Procedure § 24.6(b).

[5] Rule 29(b) provides:

The court may reserve decision on the motion, proceed with the trial (where

(continued...)

8

question were limited to Rule 29(b), which only apply if a district court *reserves* ruling on a motion for judgment of acquittal. The amendments did not affect Rule 29(a), which apply if the district court rules on a motion for judgment of acquittal before a case is submitted to the jury. Accordingly, our waiver rule continues to apply to motions for judgment of acquittal under Rule 29(a). If a district court *denies* a motion for judgment of acquittal made at the close of the Government's case-in-chief and a defendant proceeds with his case, we review the entire record on appeal. See Vallo, 238 F.3d at 1248; Lazcano-Villalobos, 175 F.3d at 844 n.3.[6]

In this case, Delgado filed a motion for judgment of acquittal at the close of the

_____

[5](...continued)
the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

[6] In United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000), the defendant moved for judgment of acquittal at the close of the Government's case-in-chief and the district court denied the motion. The defendant then presented his case. Notwithstanding our waiver rule, we stated "[w]hen reviewing the denial of a motion for judgment of acquittal made at the close of the government's case-in-chief, we look only to evidence entered into the record at the time of the motion, that is, when the government rested." We are not bound by Wood because the statement conflicts with earlier, settled, Circuit precedent. See Jennings v. Natrona County Det. Ctr. Med. Facility, 175 F.3d 775, 780 n.3 (10th Cir. 1999) ("when faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom") (internal citation omitted); see also Vallo, 238 F.3d at 1248 (when a defendant testifies in her own defense, "we consider the entire record when determining the sufficiency of the evidence"); United States v. Cox, 929 F.2d 1511, 1513 (10th Cir. 1991) ("the defendant's right to a sufficiency of the evidence review *based solely on the government's case* is nevertheless waived once the defendant presents evidence"); Bowie, 892 F.2d at 1496 (same).

9

Government's case-in-chief. The district court denied Delgado's motion under Fed. R. Crim. P. 29(a). Delgado subsequently presented his case-in-chief. Accordingly, Delgado waived his right to limit our review to the Government's case-in-chief alone and we consider the entire record on appeal.

## III.

## A.

The elements of conspiracy are well-settled. See United States v. Dozal, 173 F.3d 787, 797 (10th Cir. 1999). Under 21 U.S.C. § 846, the Government must prove beyond a reasonable doubt: (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators. Dozal, 173 F.3d at 797. A jury may infer guilt "from the surrounding circumstances and presume that a defendant acting in furtherance of a conspiracy is a knowing participant therein." Id. An agreement may be inferred from circumstantial evidence that indicates concerted action. See United States v. Jones, 44 F.3d 860, 865 (10th Cir. 1995). To be reasonable, however, the inference of an agreement must be more than mere speculation or conjecture. See id.

Factors the jury, or a court reviewing a jury's verdict, may consider in drawing the inference of a conspiracy include, but are not limited to: (1) a defendant's presence at the crime scene; (2) a defendant's association with co-conspirators; (3) evidence of

conflicting stories; (4) active attempts to divert officers' attention from a stopped vehicle; (5) participation in drug transactions; or (6) knowledge of and control over drugs. See id. at 868. Any single factor, standing alone, may be insufficient to support an inference of a conspiracy. See United States v. Riggins, 15 F.3d 992, 994 (10th Cir. 1994). A direct correlation exists, however, between the number of circumstantial facts and the existence of a conspiracy. See Jones, 44 F.3d at 868.

In this case, the Government presented sufficient evidence at trial for a rational trier of fact to find Delgado guilty of conspiracy to possess with the intent to distribute marijuana. Myrick and Delgado both agreed to drive a van filled with 166.5 pounds of marijuana. Both Defendants helped pay for the van's gasoline. Delgado admitted he knew the marijuana was in the back of the van and remained in the van thereafter. A reasonable jury could infer that but for the Wyoming Highway Patrol's intervention, Delgado would have remained in the van and would have transported the marijuana to Illinois. Further, Delgado's suitcase was lying on top of the garbage bags holding the marijuana. A reasonable jury could therefore infer Delgado had control over the marijuana. Myrick's testimony she saw Delgado rummaging through the back of the van at a gas station supports such an inference. Further, law enforcement officers found a can of air freshener in the passenger side door where Delgado was sitting. Myrick testified she saw Delgado spray the air freshener throughout their trip. A reasonable jury could therefore infer Delgado attempted to mask the smell of the marijuana.

11

Moreover, Delgado and Myrick told conflicting stories to the jury regarding the purpose of their trip. Both stories provide circumstantial evidence Delgado was involved in an agreement to transport the marijuana. Myrick's version of events implicates Delgado's brother, Rodriguez, who may have been involved with drugs. The evidence also indicated Delgado and Rodriguez visited Myrick at her house in Illinois on several prior occasions. A reasonable jury could infer the three were involved in a conspiracy to distribute marijuana. Finally, when asked whether Delgado ever entered into an agreement with Myrick to transport drugs, he answered "[t]his is the first time." A reasonable jury could infer Delgado had transported illegal drugs previously, albeit with a different conspirator. Based on the foregoing, the evidence was sufficient for a reasonable jury to find Delgado guilty of conspiracy to possess with the intent to distribute marijuana.

B.

The elements of possession with the intent to distribute a controlled substance are well-settled. McKissick, 204 F.3d at 1291. Under 21 U.S.C. § 841(a)(1), the Government must prove beyond a reasonable doubt the defendant: (1) possessed the controlled substance; (2) knew he possessed the controlled substance; and (3) intended to distribute or dispense the controlled substance. McKissick, 204 F.3d at 1291. Possession of a controlled substance may be actual or constructive. Id. Constructive possession may be established by circumstantial evidence and may be joint among several individuals. Id.

12

In cases involving joint occupancy of a vehicle where a controlled substance is found, some evidence supporting at least a plausible inference the defendant had knowledge of and access to the controlled substance must be introduced. Id.

The elements of aiding and abetting are also well-settled. Jones, 44 F.3d at 869. Under 18 U.S.C. § 2, the Government must prove beyond a reasonable doubt the defendant: (1) "willfully associate[d] with the criminal venture," and (2) "aid[ed] such venture through affirmative action." Jones, 44 F.3d at 869. Mere presence at a crime scene is insufficient to prove aiding and abetting. See id. Although knowledge a crime is being committed is relevant, some showing of intent to further the criminal venture must be introduced at trial. See id.

In this case, the Government introduced sufficient evidence showing Delgado "possessed"- either actually or constructively - the marijuana found in the van. The evidence showed Delgado knew about the marijuana, had access to the marijuana, and attempted to mask the smell of the marijuana. Sufficient evidence was also presented showing Delgado aided and abetted the criminal venture. Delgado knew, at least by Utah, a crime was being committed. Delgado willfully intended to further the criminal venture by driving the van, paying for gas, spraying air freshener to mask the smell of the marijuana, and misrepresenting the purpose of his trip to law enforcement officers. Based on the foregoing, the evidence was sufficient for a reasonable jury to find Delgado guilty of possession with the intent to distribute marijuana and for aiding and abetting a

13

criminal venture.

The district court's denial of Delgado's motion for judgment of acquittal is therefore

AFFIRMED