F I L E D
United States Court of Appeals
Tenth Circuit

April 5, 2006

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WILLIAM R. SLAUGHTER,

Defendant-Appellant.

No. 05-3040

(D.C. No. 04-CR-10143-01-MLB)
(D.Kan.)

ORDER AND JUDGMENT[*]

Before **TACHA**, Chief Circuit Judge, **BALDOCK**, and **LUCERO**, Circuit Judges.[**]

A jury convicted Defendant William R. Slaughter of possession with intent to

distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a), (b)(1)(B), and 18

U.S.C. § 2.[1]  At the close of the Government's case-in-chief, Defendant filed a motion for

---

[*]  This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  The court generally disfavors
the citation of orders and judgments; nevertheless, an order and judgment may be cited
under the terms and conditions of 10th Cir. R. 36.3.

[**]  After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.

[1] The jury also found Defendant guilty of possession with intent to distribute
approximately 107.2 grams of marijuana in violation of 21 U.S.C. § 841(a) and (b)(1)(D)
and 18 U.S.C. § 2, as well as travel in interstate commerce to promote an unlawful

judgment of acquittal. See Fed. R. Crim. P. 29(a). The district court denied Defendant's motion finding sufficient evidence to submit the case to a jury. After the jury returned a guilty verdict, the court sentenced Defendant to eighty-four months imprisonment. On appeal, Defendant argues the district court erred in denying his Rule 29(a) motion because the Government's proffered evidence was insufficient to support his conviction. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

I.

The trial record reveals that on the afternoon of April 27, 2004, Defendant and his passenger, Eugene Williams, were traveling from Sacramento, California to St. Louis, Missouri along Interstate 70. Kansas Highway Patrol Trooper Shawn Phillips was patrolling Interstate 70, near Colby, Kansas, when he stopped Defendant's vehicle for speeding. Trooper Phillips approached Defendant's vehicle and asked Defendant for his driver's license and vehicle registration. Trooper Phillips testified he noticed a strong odor of burnt marijuana coming from inside the vehicle. Defendant stated he did not have his driver's license on him, but he thought it might be in the trunk. Defendant, instead, handed Trooper Phillips a rental agreement for the vehicle. The agreement provided Patricia Slaughter, Defendant's mother, had rented the vehicle on April 22, 2004. The vehicle was due back in St. Louis on April 27, 2004. Patricia Slaughter was the only authorized driver listed on the

---

activity in violation of 18 U.S.C. § 1952(a)(i)(3) and 18 U.S.C. § 2. Defendant raises no issue related to his conviction for these offenses.

agreement. Trooper Phillips asked Defendant to retrieve his driver's license from the trunk. When Defendant opened the trunk, Trooper Phillips noticed a strong odor of raw marijuana. Defendant rustled through a black duffle bag but claimed he could not find his driver's license. Based on the possible presence of marijuana, Trooper Phillips decided to search the vehicle.

To ensure his safety, Trooper Phillips placed Defendant in handcuffs and ordered him and Williams to stand in front of the vehicle. Trooper Phillips searched the vehicle's trunk. Inside he uncovered three individually wrapped packages of heroin hidden underneath the carpet in the trunk's quarter panel. The three packages of heroin were wrapped in clear cellophane. Inside the packages were twenty "balls" of heroin each individually wrapped in clear plastic and electrical tape and weighing approximately one ounce. Trooper Phillips also found in the trunk a brown paper bag containing a roll of clear cellophane along with duct tape and clear plastic tape. The cellophane and tape inside the bag appeared to match the cellophane and tape used to package the heroin. During a search the vehicle's interior, Trooper Phillips found a piece of aluminum foil that appeared to contain marijuana residue. Trooper Phillips placed Defendant and Williams under arrest for possession of heroin.

The vehicle was transported to headquarters where Trooper Phillips performed a more thorough search. Inside the black duffel bag located in the trunk, Trooper Phillips found approximately a quarter-pound of marijuana rolled up in a pair of jeans. The marijuana was similarly wrapped in clear cellophane. Trooper Phillips found Defendant's Missouri ID card

3

in the back pocket of the jeans. Subsequent testing revealed Defendant's fingerprints on the roll of cellophane found in the trunk of the vehicle. No fingerprints, however, were found on the plastic wrap surrounding the drugs. The cellophane roll on which Defendant's fingerprints were found was of the same width and plastic consistency as the cellophane used to wrap the heroin and the marijuana.

The following day, Defendant waived his Miranda rights and provided DEA Agent Freddie Strawder a statement. According to Defendant, he met Williams approximately a month prior to his arrest while Defendant was in California visiting friends and family. Williams later traveled to St. Louis to visit Defendant. Williams stayed with Defendant for approximately ten days. On April 22, 2004, Defendant's mother rented a vehicle so Defendant and Williams could drive back to Sacramento. They arrived two days later. According to Defendant, he traveled to Sacramento to build a room in his friend "A.J.'s" mechanic's shop. Defendant admitted purchasing the quarter-pound of marijuana while in Sacramento. He also acknowledged frequently smoking marijuana and also selling small quantities. Defendant told Agent Strawder that "by purchasing the marijuana in California for $1,300, he could–he felt that he could go back to St. Louis and sell it and make $3,000[.]" Defendant denied any knowledge of the heroin.

On direct examination at trial, Defendant testified he spent five days in California. During cross-examination, however, Defendant changed his testimony, and admitted he was in California less than forty-eight hours. When asked about A.J., Defendant could not recall

4

his phone number, last name, or the address to his shop. Defendant further testified he bought the marijuana to smoke but did not intend on selling it, despite admitting to selling marijuana in the past. He also testified he wrapped the marijuana and concealed it in the trunk. According to Defendant, he asked Williams to get something to wrap the marijuana to mask the strong smell. Defendant stated Williams gave him a brown paper bag containing, among other things, the cellophane he used to wrapped the marijuana. Defendant again denied any knowledge of the heroin. At the close of all the evidence, the jury returned a general verdict of guilty.

## II.

Defendant argues the Government did not introduce sufficient evidence for the jury to conclude he possessed the heroin with intent to distribute; or aided and abetted Williams in this criminal venture. Specifically, Defendant argues the Government did not introduce any evidence showing he had contact with the heroin or was aware the heroin was in the trunk; nor according to Defendant did the Government introduce any evidence showing he assisted Williams in possessing the heroin with intent to distribute.

We review the record *de novo* to determine whether viewing the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the Government, any rational trier of fact could have found Defendant guilty of the charged crime beyond a reasonable doubt. See United States v. Avery, 295 F.3d 1158, 1177 (10th Cir. 2002). "In conducting our inquiry, we do not weigh conflicting

5

evidence nor consider the credibility of witnesses." United States v. Delgado-Uribe, 363 F.3d 1077, 1081 (10th Cir. 2004). Instead, we only determine "'whether [the] evidence, if believed, would establish each element of the crime.'" Id. (quoting United States v. Vallo, 238 F.3d 1242, 1247 (10th Cir. 2001)). "The evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt. Instead, the evidence only has to reasonably support the jury's finding of guilt beyond a reasonable doubt." United States v. Pulido-Jacobo, 377 F.3d 1124, 1129 (10th Cir. 2004).

A.

To sustain Defendant's conviction of possession with intent to distribute under § 841(a), the Government's evidence must be sufficient to persuade the jury beyond any reasonable doubt that Defendant (1) possessed the controlled substance; (2) knew he possessed the controlled substance; and (3) intended to distribute the controlled substance. See United States v. McKissick, 204 F.3d 1282, 1291 (10th Cir. 2000). Possession may be either actual or constructive. Id. Constructive possession exists where "a person knowingly has ownership, dominion, or control over the narcotics and the premises where the narcotics are found." United States v. Reece, 86 F.3d 994, 996 (10th Cir. 1996); see also United States v. Ruiz-Castro, 92 F.3d 1519, 1531 (10th Cir. 1996) (defining constructive possession of a narcotic as "an appreciable ability to guide the destiny of the drug").

Constructive possession may be joint among two or more individuals. United States

6

v. Carter, 130 F.3d 1432, 141 (10th Cir. 1997). "In cases involving joint occupancy of a place where contraband is found, mere control or dominion over the place in which the contraband is found is not enough to establish constructive possession." McKissick, 204 F.3d at 1291; see also Reece, 86 F.3d at 996 (holding evidence insufficient to support a conviction for possession where the Government only showed defendant drove the car in which the narcotics were found and was acquainted with the individual on whose person the narcotics were found). The Government must, therefore, present "direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband." McKissick, 204 F.3d at 1291 (quoting United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998). In other words, the Government must introduce evidence supporting at a minimum a plausible inference the defendant had knowledge of and access to the contraband. Id.

In the alternative, we may sustain Defendant's conviction as a principal if the evidence is sufficient to establish he aided and abetted Williams in possessing the heroin with intent to distribute. See 18 U.S.C. § 2.[2] To sustain a conviction of aiding and abetting under § 2, the Government must persuade the jury beyond any reasonable doubt Defendant: (1) willfully associated himself with the charged criminal venture, and (2) aided the venture

---

[2] Co-defendant Williams pleaded guilty to travel in interstate commerce to promote an unlawful activity in violation of 18 U.S.C. § 1952(a)(i)(3) and 18 U.S.C. § 2, namely, possession with intent to distribute a mixture or substance containing a detectable amount of heroin and marijuana.

through an affirmative action. See Delgado-Urbine, 363 F.3d at 1084. Defendant's presence at the crime scene, standing alone, is insufficient to prove aiding and abetting. Id. Some showing of intent to further the criminal venture must be proven at trial. Id. "Participation in the criminal venture may be established by circumstantial evidence and the level of participation may be of 'relatively slight moment.'" United States v. Leos-Quijada, 107 F.3d 786, 794 (10th Cir. 1997) (quoting United States v. McKneely, 69 F.3d 1067, 1072 (10th Cir. 1995)).

B.

After reviewing the record in the light most favorable to the Government, we conclude the district court properly denied Defendant's Rule 29(a) motion for judgment of acquittal. The Government introduced sufficient evidence for a reasonable jury to find Defendant guilty of possession with intent to distribute heroin, or alternatively, aiding and abetting Williams in possessing the heroin with intent to distribute. The circumstantial evidence the Government introduced at trial was undoubtedly sufficient to individually link Defendant to the heroin and establish his possession. Defendant was driving and in possession of the vehicle in which the heroin had been hidden. His mother had rented the vehicle so Defendant could make a quick round trip between St. Louis and Sacramento. Defendant's fingerprints were on the roll of cellophane that was recovered from the trunk of the vehicle–the same cellophane used to wrap both the marijuana and the heroin. While

8

Defendant admitted to wrapping the marijuana with the cellophane roll found in the trunk, the evidence was sufficient for a reasonable jury to conclude Defendant also wrapped the heroin. We reject Defendant's argument the evidence was insufficient to show Defendant possessed the heroin because Defendant's fingerprints were not actually on the heroin package itself and because no one saw Defendant with the heroin. Such direct evidence is not required. Circumstantial evidence along with reasonable inferences drawn from the evidence can suffice in supporting a conviction for possession with intent to distribute. See United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997). These are reasonable inferences which the jury properly drew from the evidence.

The Government also introduced sufficient evidence showing Defendant intended to distribute the heroin. First, based on the sheer quantity of the heroin and the manner in which it was packaged–twenty "balls" individually wrapped and weighing approximately one ounce each–the jury could have properly inferred Defendant intended to distribute the heroin. See United States v. Pulido-Jacobo, 377 F.3d 1124, 1131 (10th Cir. 2004) (noting "a jury may infer intent to distribute from the possession of large quantities of drugs"). Second, the jury could have inferred that because Defendant admitted to Agent Strawder he intended to sell the marijuana when he returned to St. Louis, Defendant intended to sell the heroin as well.

Alternatively, the Government introduced sufficient evidence from which a reasonable jury could have inferred Defendant aided and abetted Williams in possessing the heroin with intent to distribute. The jury could have inferred, based on the short turnaround nature of the

9

trip, that Defendant and Williams traveled to Sacramento for the sole purpose of purchasing narcotics. Defendant's inconsistent testimony regarding the length of the trip and his inability to provide any particular information regarding A.J., strengthened such inference. Trooper Phillips testified he observed certain "things" during the traffic stop that based on his training and experience he believed were consistent with someone trafficking narcotics. For example, the vehicle was a rental, but the authorized driver was not in the vehicle; there was air freshener in the vehicle, which Trooper Phillips testified was suspicious since generally people who rent a vehicle for a short time don't go out of their way to buy air freshener, and air freshener is commonly used to mask the smell of narcotics; and the vehicle had a lived-in appearance. The jury could have found Defendant willfully furthered this criminal venture by asking his mother to rent a vehicle, and then driving the vehicle despite having a revoked license. Finally, the jury could have found Defendant wrapped the heroin and concealed it in the trunk of the vehicle.

AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge