FILED
United States Court of Appeals
Tenth Circuit

**February 1, 2011**

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

VICTOR CLAY RICHARDSON,

     Defendant-Appellant.

No. 09-2139

(D.C. No. 2:06-CR-00706-RB-1)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **EBEL** and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is, therefore,

submitted without oral argument.

Defendant Victor Clay Richardson, convicted of being a felon in possession of a

firearm, in violation of 18 U.S.C. § 922(g), appeals his conviction, arguing that the

evidence presented at trial was insufficient to establish that he possessed the weapon

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

charged in the indictment. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I

On the evening of January 11, 2005, a Roswell, New Mexico resident named Joshua Hedgecock was playing video games at his next-door neighbor's apartment when he heard people arguing outside. Hedgecock looked out a window and saw Richardson, who he recognized as the maintenance man for the apartment complex, "walk into the street and fire a [silver and black handgun], one round, into the air." ROA, Vol. 3 at 140-41. Using his cell phone, Hedgecock reported the incident first to the owner of the apartment complex, and then to the Roswell police department.

At approximately 12:06 a.m. on January 12, 2005, Roswell police officer Eric Madsen and a training recruit, David Johnson, were dispatched to the scene to investigate the incident reported by Hedgecock. Madsen and Johnson spoke with Hedgecock, who told them the incident he had reported, which he described as a domestic altercation, occurred just outside of a single-unit apartment located near the corner of Walnut and Ohio Streets. After speaking with Hedgecock, Madsen and Johnson searched the area where the shot had allegedly been fired and found a .380 caliber casing laying in the street. Madsen and Johnson then proceeded to the single-unit apartment described by Hedgecock. The sole occupant of the apartment at that time was a woman named Loretta Blevins. Blevins admitted hearing a loud bang, but was otherwise very defensive and refused, initially, to provide Madsen and Johnson with the name of her live-in boyfriend.

2

Blevins ultimately admitted that Richardson was her boyfriend, but she never disclosed Richardson's whereabouts. Madsen and Johnson were unable to locate Richardson.

Approximately two hours later, at 2:30 a.m. on January 12, 2005, Roswell police officer Chris Brown was dispatched to an address on Forest Avenue to investigate "an unknown trouble, possible domestic dispute . . . ." Id. at 121. As he was driving eastbound on Forest Avenue towards the identified location, Brown observed a man and two women, later identified as Richardson, Blevins, and Cindy Hannan Gaspar (Hannan[1]), walking in a westerly direction. Brown further observed Richardson throw his arms up in the air. Because Richardson appeared to be agitated, Brown made a u-turn, briefly followed the three individuals as they turned on Grand Avenue and began walking north, and then stopped them and made contact with Richardson and Hannan. Richardson stated, without specific questioning from Brown, "that he didn't have anything [i.e., a weapon] and [to] go ahead and search him." Id. at 126. Brown proceeded to conduct a pat-down search of Richardson. Brown noticed that Richardson had an odor of intoxicants on his breath and body.

A second Roswell police officer, Mikel Aguilar, arrived on the scene and assisted Brown by speaking with Hannan. Hannan told Aguilar that, "prior to . . . Brown's contact with them, . . . Richardson had thrown a gun into a vacant, empty lot." Id. at 160. Aguilar proceeded to the vacant lot described by Hannan, which was located on the

_____

[1] Richardson's appellate pleadings refer to this witness as Hannan. Consequently, we will do the same.

northwest corner of Forest and Grand, and recovered a .380 caliber Lorcin handgun, silver in color with a black handle and black case.

In describing the events that lead up to Richardson throwing the gun into the vacant lot, Hannan stated that earlier that evening she had visited Richardson at the house he shared with Blevins on Ohio Street. After leaving that house and stopping at her mother's house, Hannan stated, she encountered Richardson again at another individual's house on Forest Avenue. There, Hannan stated, she loaned Richardson her car for a brief period of time. When Richardson returned her car to her, Hannan stated, she observed a silver gun with a black handle in the car's console. Hannan indicated that she went immediately into the house on Forest Avenue and told Richardson she could not be around firearms because of a prior felony conviction. According to Hannan, Richardson retrieved the gun from her car and proceeded to get into an argument in the street with his girlfriend, Blevins.

Subsequent investigation by law enforcement officials revealed that the gun retrieved by Aguilar from the vacant lot had been previously purchased at a Roswell pawn shop in January 2000 by Richardson's ex-wife, Jeannie Brown. According to Brown, the gun disappeared in 2002, shortly after Richardson performed some work at her house, and was never recovered, despite her reporting the missing gun to the local sheriff's department.

On April 5, 2006, a federal grand jury indicted Richardson on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The case proceeded

4

to a jury trial on October 2, 2006. After two days of evidence, the jury found Richardson guilty as charged. Richardson was subsequently sentenced to 235 months' imprisonment.

II

Richardson contends on appeal that the evidence presented at trial was insufficient to support his conviction. We review Richardson's "challenge to the sufficiency of the evidence de novo, but in doing so we owe considerable deference to the jury's verdict." United States v. Mullins, 613 F.3d 1273, 1280 (10th Cir. 2010).

Although Richardson concedes "he is a convicted felon" and that the gun at issue "traveled in interstate commerce," he "disputes that the Government's evidence of actual possession [wa]s plausible . . . ." Aplt. Br. at 9. In support, Richardson notes that none of the police officers involved in the case personally observed him in possession of the firearm. In turn, Richardson contends that the testimony of Hedgecock and Hannan, the two government witnesses who testified as having observed him in possession of the gun at issue, was contradicted by the testimony of law enforcement officers. More specifically, Richardson contends that Hedgecock's testimony regarding the time he observed Richardson allegedly shoot the gun, i.e., approximately an hour after sunset on January 11, 2005, was contradicted by the testimony of the responding Roswell police officer, Madsen, who testified that he and a recruit responded to the scene of the alleged shooting at approximately 12:06 a.m. on January 12, 2005. Because this time discrepancy was "unexplained," Richardson argues, all of Hedgecock's testimony must be deemed implausible. Id. at 10.

5

Richardson further contends that Hannan's testimony was "equally unbelievable and implausible." Id. To begin with, Richardson asserts that Hannan's testimony that "Richardson returned her vehicle, with a firearm on the console, somewhere around 11:00 to 11:30 p.m. on January 11, 2005," was contradicted by testimony from Roswell police officer Tim Rogers, who testified he stopped Richardson and three other individuals driving in Hannan's vehicle at approximately 6:00 p.m. that same evening. Id. According to Richardson, "Hannan did not inform the jury [that he] borrowed her vehicle twice." Id. Richardson also notes that "Hannan place[d] [him], Blevins and herself at the intersection of Forest and Grant [sic] streets at approximately 11:30 p.m." on January 11th, while "[o]fficers Brown and Aguilar located the trio at that location at approximately 2:45 a.m. on the 12th." Id. "Given that [Hannan's] testimony contradicts the police officers['] time line," Richardson asserts, "her entire testimony lacks factual believability." Id. at 10-11. In sum, Richardson asserts, "[t]he lack of credulity of [Hannan's] testimony and Hedgecock's, together or singly, illuminates that a reasonable jury could not find [him] guilty beyond a reasonable doubt" of possessing the weapon charged in the indictment. Id. at 11.

Richardson is correct in noting that the testimony of the government's witnesses did not fit perfectly together, and that there were certain discrepancies in the testimony, particularly regarding the timing of certain events. But Richardson's arguments ignore the principles we are bound to apply in reviewing a sufficiency-of-evidence challenge. In assessing the sufficiency of evidence presented at trial, we neither "weigh conflicting

6

evidence nor consider the credibility of witnesses." United States v. Delgado-Uribe, 363 F.3d 1077, 1081 (10th Cir. 2004). Instead, we "simply determine whether [the] evidence, if believed, would establish each element of the crime." United States v. Vallo, 238 F.3d 1242, 1248 (10th Cir. 2001) (internal quotation marks omitted).

Reviewing the record on appeal with those principles in mind, we conclude that the evidence presented at trial was more than sufficient to establish that Richardson possessed the gun at issue. Hedgecock testified that he directly observed Richardson, who he knew as his apartment complex's maintenance man, "walk into the street and fire a [silver and black handgun], one round, into the air."[2] ROA, Vol. 3 at 140-41. Officer Madsen, who responded when the shooting was reported, testified that he spoke with Blevins, the sole occupant of the apartment near where the shooting occurred. According to Madsen, Blevins conceded she had "heard a loud bang." Id. at 326. Further, Blevins grudgingly admitted that Richardson was her boyfriend and lived with her in the apartment, but never disclosed to Madsen Richardson's whereabouts. Little more than two hours later, two other Roswell police officers encountered Richardson, Blevins and Hannan walking along a street approximately three miles from where the shooting had

_____

[2] Although Hedgecock testified initially that he thought the shooting occurred approximately an hour after sunset, he later testified, during cross-examination by Richardson's counsel, that he was not sure about the exact time of the shooting. ROA, Vol. 3 at 149 ("I'm not sure [about the exact time], but I'm just telling you it was dark outside."). Construing this testimony in the light most favorable to the government, a reasonable jury could readily have found that the shooting occurred much closer to midnight than Hedgecock originally had thought.

occurred. Upon being approached by one of those officers, Richardson stated, without specific questioning by the officer, "that he didn't have anything and go ahead and search him." Id. at 126. In turn, Hannan informed the other officer that Richardson had been in possession of a gun and had, upon observing one of officer's patrol cars, thrown the gun into a nearby vacant lot. That officer promptly retrieved the gun from the vacant lot. Notably, the retrieved gun matched both the description given by Hedgecock and the caliber of the casing found at the scene of the earlier shooting. Moreover, the gun was previously purchased by Richardson's ex-wife and disappeared in 2002 shortly after Richardson performed work at his ex-wife's house. Together, this evidence, when construed in the light most favorable to the government, would have allowed a jury to reasonably find that Richardson possessed the firearm at issue.[3]

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge

---

[3] The testimony of Hannan, i.e., that Richardson left a silver and black handgun in her vehicle earlier in the evening, bolsters, but is by no means essential to, our determination that the government's evidence was sufficient to support the conviction.

8