FILED
United States Court of Appeals
Tenth Circuit

October 27, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

ALEJANDRO LOPEZ,

     Defendant - Appellant.

No. 14-2192
(D.C. No. 2:13-CR-02152-RB-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **GORSUCH**, and **McHUGH**, Circuit Judges.
_____

A jury found Alejandro Lopez guilty of possession with intent to distribute

500 grams or more of cocaine. He now contends there was insufficient evidence to

support his conviction. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    Factual Background

A confidential informant advised agents from the Las Cruces Metro Narcotics

Task Force ("Metro Narcotics") and the Federal Bureau of Investigation ("FBI") that

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the defendant's brother, Eddy Lopez,[1] was willing to sell a kilogram of cocaine for $27,000. The confidential informant negotiated the price down to $22,000 and arranged a controlled buy, with Metro Narcotics Agent Ernesto DiMatteo posing as the buyer. Based on previous experience, the agents believed Eddy would be assisted by Alejandro and another individual named Angel Torres. The agents also believed that Torres was the source of the cocaine.

On the day of the buy, Eddy agreed to meet the confidential informant at a park near Eddy's house in Anthony, New Mexico. The agents conducting surveillance saw Torres drive to Eddy's house. The two men spoke briefly, but the agents did not see any delivery take place. Torres then left Eddy's house and drove slowly around the area, apparently checking for surveillance. A short time later, the agents saw Eddy walk from his house almost to the park. He did not appear to be carrying any packages, and his clothing would not have allowed him to conceal a package large enough to contain the quantity of cocaine for sale.

Eddy returned to his house and waited outside until Alejandro picked him up in a silver Dodge truck. The brothers proceeded to the park and met the confidential informant. Eddy removed a package from the truck and put it in a gym bag on the back seat of the confidential informant's car. Then Alejandro dropped Eddy at Eddy's house and followed the confidential informant to Las Cruces, New Mexico, where the buyer was supposedly waiting with payment.

---

[1] Because the defendant and his brother share the same last name, we refer to the defendant as "Alejandro" or "Mr. Lopez" and to his brother as "Eddy."

The police stopped and arrested Eddy, who had left his house and was driving with his wife, and found several pounds of marijuana in the trunk of Eddy's car during a consensual search. The police also instigated a traffic stop and arrested Alejandro. No drugs or cash were found in his truck or on him. Meanwhile, Agent DiMatteo met the confidential informant and obtained the package that Eddy had placed on the back seat. The package, which had a hole in the top through which white powder was escaping, field-tested positive for cocaine and weighed 794 grams without packaging.

The police took the brothers separately to the FBI's office for processing and interrogation. According to the agents, Alejandro waived his *Miranda* rights and agreed to be interviewed. FBI Agent Bryan Acee conducted the interview, with some questioning by Agent DiMatteo. Agent Acee has been in law enforcement for fourteen years, has extensive training in drug trafficking, and has participated in thousands of drug investigations. Agent DiMatteo is a twenty-year veteran who has conducted several hundred investigations in narcotics cases.

The interview was not recorded, but both agents testified about its substance and referred to their written reports as needed. At first, Alejandro denied any knowledge of illegal activity, but he eventually admitted to delivering the package to Eddy. Alejandro also admitted that (1) he picked up the drugs from a house that was identified as Torres's house; (2) he originally thought the package contained marijuana but knew it contained cocaine when he saw white powder spilling out of

3

the hole in the packaging; (3) he knew he was supposed to pick up $22,000 in Las Cruces; and (4) Eddy was going to pay him $100 for his efforts.

The grand jury indicted Alejandro, the trial court denied a motion for a judgment of acquittal under Fed. R. Crim. P. 29, and the jury convicted Alejandro of possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). The trial court sentenced him to 60 months in prison.

## II. Discussion

On appeal, Mr. Lopez contends the evidence was insufficient to support the conviction because the government did not present evidence on where Eddy obtained the package or evidence that Alejandro directly or constructively possessed the cocaine.

We review sufficiency-of-the-evidence challenges de novo. *United States v. Camick*, 796 F.3d 1206, 1213 (10th Cir. 2015). Our task is to "view[] the evidence in the light most favorable to the Government to determine whether any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *Id.* at 1213–14 (internal quotation marks omitted). In doing so, we consider "the collective inferences to be drawn from the evidence as a whole." *United States v. Bader*, 678 F.3d 858, 873 (10th Cir. 2012) (internal quotation marks omitted). "[W]e do not weigh conflicting evidence or consider witness credibility . . . ." *Camick*, 796 F.3d at 1214 (internal quotation marks omitted). And we do not "second-guess

the fact-finding decisions of the jury." *United States v. Irving*, 665 F.3d 1184, 1193 (10th Cir. 2011) (internal quotation marks omitted).

"[W]e must simply determine whether [the] evidence, if believed, would establish each element of the crime." *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004) (second alteration in original) (internal quotation marks omitted). To obtain a conviction for possession with intent to distribute, the government was required to prove beyond a reasonable doubt that Mr. Lopez "(1) possessed the controlled substance; (2) knew he possessed the controlled substance; and (3) intended to distribute or dispense the controlled substance." *Id.* at 1084. "Possession of a controlled substance may be actual or constructive," and "[c]onstructive possession may be established by circumstantial evidence and may be joint among several individuals." *Id.*

Viewed in the light most favorable to the government, the following evidence was sufficient to satisfy these elements:

- Alejandro admitted during questioning that, as a favor to Eddy, he picked the drugs up from a house that matched the description of Torres's house and transported the drugs to the park. Alejandro also identified Torres's house on a map on the computer.

- Former Metro Narcotics Agent Brian Johnston testified that he did not see Eddy carrying a package when he got into Alejandro's truck and Eddy's clothing would not have allowed him to conceal a package large enough to contain the quantity of cocaine for sale. He also testified that the brothers drove directly to the park, where Eddy took the package of cocaine from the truck and gave it to the confidential informant. Agent Acee provided expert testimony that it would be highly unlikely for Eddy to risk carrying the drugs in the neighborhood after he carefully planned the transaction. And Agent DiMatteo testified that he did not witness any kind of exchange when Eddy and Torres met before the controlled buy. A rational trier of

5

fact could infer from this testimony that Alejandro already had the drugs in his truck and thus in his possession when he picked up Eddy and went to the park to meet the confidential informant.

- Alejandro admitted during questioning that he initially thought the package contained marijuana but later realized it contained cocaine when he saw white powder coming out of a hole in the packaging.

- Alejandro accompanied Eddy to the controlled buy.

- Alejandro admitted during questioning that he was driving to Las Cruces to pick up the payment for the drugs and knew the amount due was $22,000.

- Alejandro admitted during questioning that Eddy was going to pay him $100 for his efforts.

- Agent Acee provided expert testimony that it would be highly unlikely for Eddy and Torres to allow Alejandro to be present at the actual exchange with the confidential informant, to follow the informant to receive payment, and to bring back the money if Alejandro was not familiar with the nature of the transaction—particularly since Eddy and Torres appeared to be cautious and careful. Agent Acee further testified that the facilitator of a drug transaction usually has a very active role, and issues might arise as to quality and payment in the first transaction between parties. For instance, the buyer might want to inspect or evaluate the drugs, in which case Alejandro would need to be knowledgeable.

- Alejandro changed his story during questioning. He initially stated he was going to Las Cruces to "scout out a construction job" and to "meet a guy." Aplt. Corrected App. at 147. But when asked who he was meeting, Alejandro said he "was following a guy." *Id.* And after finding out his brother was also under arrest, Alejandro admitted he agreed to help Eddy with the deal, picked up the package from Torres's house, and brought it to the park. "False exculpatory statements made by a defendant are admissible to prove consciousness of guilt and unlawful intent." *United States v. Tager*, 481 F.2d 97, 100 (10th Cir. 1973).

Mr. Lopez admits the government presented this evidence but makes a conclusory statement that the evidence was not sufficient to prove possession. We are not persuaded.

6

## III.    Conclusion

This court will reverse only when "no rational trier of fact could have reached the disputed verdict." *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1129 (10th Cir. 2004) (internal quotation marks omitted).  Taking the evidence presented at Mr. Lopez's trial, as well as all reasonable inferences therefrom, in the light most favorable to the government, a rational trier of fact could conclude that Mr. Lopez possessed the cocaine during the controlled buy, knew it was cocaine, and intended to distribute it.  We therefore affirm his conviction.

Entered for the Court

Carolyn B. McHugh
Circuit Judge